I find myself unable to agree with the conclusions of the majority opinion in these two cases for the following reasons:
Mrs. Streater testified that she was going about 15 miles per hour on Division Street before reaching the intersection of Hodges Street; that she came to a pause, or virtual stop, a few feet before reaching the intersection and looked both ways. On seeing no one approaching from either direction on Hodges Street, she proceeded across in the center of Division Street, going straight across. She says that she could see the man hole in the street to her left over her left fender. She did not see the Austin car after she started across the intersection until she had gotten within 3 or 4 feet of it, when she slammed on her brakes and tried to pull her car to the right. So if we accept her testimony as true, she was traveling in the center of the street. She says that the man hole in the intersection was right by her left fender, evidently meaning that she could just see this man hole to her left over her left fender, indicating that her entire car was north of this man hole which is about 6 feet south of the center of Division Street. If her car was north of this man hole so that she could see it over her left fender, as she says, it is obvious that the principal part of her car must have been about the center of the street.
According to the testimony of Austin, the front of his car had almost reached the north line of the intersection when his car was struck on the right side by the Streater car, throwing his car over to the northwest corner of the intersection and pushing it against a post at the northwest corner with such force as to cause considerable damage to his car on the left side. He said that he was traveling east of the center of Hodges Street. In placing the location of his car at the time it was struck by the Streater car, he used some cardboard slips made to scale to represent his car, and his location of the two cars shows that the front of his car at the time of the impact was about parallel with the north line of Division Street, and the back end of his car was over the man hole. He placed Mrs. Streater's car at the time of the impact practically in the same position as *Page 247 
she testified that she was when the cars collided.
From an examination of the photograph of the Austin car showing its condition after the car was struck, it is obvious that the bumper of the Streater car struck the Austin car on its right side near the center, or slightly to the rear of the center, the left part of the bumper of the Streater car being imbedded in the back fender just to the front of the rear right wheel, and the other part of the bumper striking the Austin car along the right running board. The fact that the left part of the bumper of the Streater car struck with greater force than the other part is accounted for by the fact that Mrs. Streater, at the time of the impact, had pulled to her right, as she says, to avoid striking the Austin car when she first saw it 3 or 4 feet in front of her.
The testimony of the disinterested witness, McCollister, and the position in which he placed the two cars from his observation of the skid marks and other physical facts as he saw them right after the collision, corroborates the testimony of Austin on this point. McCollister, with the use of the cardboard slips used by Austin, placed the Austin car a foot or two further south in the intersection than did Austin.
Both McCollister and Austin place the latter's car as practically all to the right of the center of Hodges Street, which was on his right side. This means that there was only about 9 feet from the right side of his car to the east line of the intersection, or in other words, the front of Mrs. Streater's car had gotten only 9 feet or so into the intersection when the bumper struck the right side of the Austin car. On the other hand, if we take the testimony of Austin, his car had traveled almost entirely across the intersection at the time of the collision, that is to say, some 22 or 23 feet from the south line. Even taking the position of the Austin car as indicated by McCollister from the skid marks, the front of the Austin car had gotten within 3 or 4 feet of the north line and the back end of his car had completely cleared the South line. The Austin car was a little over 17 feet long and more than that 17 feet, or the length of his car, had gotten into the intersection at the time of the impact, which indicates in either case, that the Austin car had traveled in the intersection more than 20 feet, while Mrs. Streater traveled only about 9 feet. To me, this is conclusive proof that the Austin car entered the intersection first, unless it was traveling more than twice as fast as the Streater car, and I do not find that the facts justify any such assumption.
It is contended that the testimony of the witness Marsh indicates that Mrs. Streater entered the intersection first. This witness who testified that she entered the intersection first was 150 feet or so south of the intersection and back of the Austin car. It is difficult for me to understand how he could have told from that distance which car entered the intersection first, as it would be very difficult for him to tell from that distance from behind the Austin car when the front of it passed into the intersection. Moreover, this witness testified that when he first saw the Streater car, it was about 200 feet from the intersection, when practically all the testimony shows, as well as the observations of the trial judge who visited the scene, that from where the witness Marsh was sitting, he could not see east on Division Street for more than 75 to 80 feet. He further says that Austin was going about 30 miles per hour when he first saw him, and Mrs. Streater was going about 20 miles per hour when he first saw her car; that Mrs. Streater did not stop at the intersection but merely slowed down, whereas she testified that she came to a virtual shop. Like the trial judge, I do not find that this witness has added much definite information as to the facts on either side of the case.
There is also much made of the fact that the bolts which hold the bumper onto the frame of the Streater car were sheered off smooth, indicating that the lick came from the left to the right against the bumper of the Streater car. As I view the situation, that is exactly what happened. The Streater car, as Mrs. Streater testified, just before the impact, was pulled to the right, and the Austin car in front of it was struck with the main force on the left end of the bumper which caused it to be caught and imbedded in the front part of the rear fender of the Austin car, thus causing the force against the bumper to come from the left to the right, the Streater car and Austin car being pulled together by the force of the impact and the momentum of the two cars diagonally across the intersection.
I have carefully examined the reasons given by the trial judge and his finding of facts. Instead of finding manifest error in his finding of facts, I think the testimony rather corroborates his findings in practically *Page 248 
all respects. There is one slight difference in his finding on one point and my conclusions in the matter, and that is with respect to the exact place where the collision occurred. He says in his reasons for judgment, that the collision occurred in the northeast corner of the intersection. While I think the bulk of the Austin car had crossed the center of the intersection and was more in the northeast corner than it was in the center, yet I think, as already pointed out, that the actual impact took place near the center line, and after the front of the Streater car had come 9 feet or so into the intersection, and after the front of the Austin car had almost gotten across the intersection and had traveled in it for more than 20 feet.
The vital and controlling facts in the case as found by the trial judge, and whose findings I believe to be justified by the record, show that the Austin car was struck on the right side by the front of the Streater car after the former car had preempted the intersection and was proceeding across on its right side of the street. It is my opinion, and I think supported by numerous decisions, that where a car is struck on its right side, either in the center or the rear of the center, while crossing an intersection and while driving at a reasonable speed, by a car coming into the intersection, there is a prima facie case of negligence made against the driver of the car which runs into and strikes the crossing car on its right or rear side after it has completed a good part of the crossing. See Monticello v. Spano, 17 La.App. 697, 137 So. 357; O'Conner v. Massachusetts Bonding Co., La.App., 2 So.2d 234; and General Exchange Insurance Corp. v. Kean's, Inc., La.App., 184 So. 410.
I do not see where Austin was guilty of any negligence. He says that he looked to his right before entering the intersection and saw the Streater car 30 or 35 feet from the intersection, which fact, if true, justified him in entering the intersection and proceeding across on his right side of the street. He had a right to assume that the driver of the Streater car would see him and not run into the side of his car. Mrs. Streater, on the other hand, admits her negligence when she says that she did not see the Austin car until she was within 3 or 4 feet of it. Why she did not see it, I am at a loss to understand, unless she was not keeping a proper lookout.
The trial judge no doubt knew the witnesses who testified in his presence and saw their demeanor on the stand when giving their testimony. He also visited the scene of the accident in the presence of the attorneys and there made careful observations of the locus in quo, all of which enabled him to evaluate and apply the evidence in the case much better than we can by reading the cold record. I do not think we are justified in reversing the trial judge on purely questions of fact presented in this case.
I therefore respectfully dissent.